IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

TROY JACKSON,                              *

    Plaintiff,                         *

       v.                             *        CIVIL NO.: WDQ-11-3569

                        *

BALTIMORE POLICE DEPARTMENT,
  et al.,                                  *

    Defendants.                        *

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

MEMORANDUM OPINION

Troy Jackson sued the Baltimore Police Department (the
"Department"), Baltimore Police Commissioner Frederick H.
Bealefeld, III, and others[1] for employment discrimination, civil
rights, and state law claims.  Pending are the City defendants'
motion to dismiss for failure to state a claim, the individual
police defendants' motion for partial dismissal or,
alternatively, for partial summary judgment, and the Department
and Bealefeld's motion for partial dismissal or alternatively,
for partial summary judgment.  For the following reasons the
City defendants' motion will be granted.  The Department and
Bealefeld's motion and the individual police defendants' motion
will be granted in part and denied in part.

---

[1] Colonel John Skinner, Lieutenant John Stanley, and Major
Anthony Brown (collectively, "the individual police
defendants"); former Mayor Sheila Dixon, current Mayor Stephanie
Rawlings-Blake, and the City Council of Baltimore (collectively,
"the City defendants"); and the State of Maryland.

I.    Background[2]

Jackson, an African-American male, began working for the Department in 1993.  ECF No. 1 ¶¶ 4, 14.  At all relevant times, Jackson held the rank of Police Officer.  *Id.* ¶ 14.

In January 2009, Jackson was assigned to the Central District.  *Id.* ¶ 15.  On January 28, 2009, Jackson met with Skinner about an Internal Affairs complaint that he was allegedly associating with "persons of questionable character." *Id.*  Skinner told Jackson that he was going to be involuntarily transferred to a new district.  *Id.*  Jackson was transferred to the Southwest District, where Brown "detailed/demoted" him to patrol.  *Id.* ¶ 16.  General Order Article 25(C) states that notice must be provided before an involuntary transfer and officers may request a hearing.  *Id.* ¶ 19.  Jackson was not given notice or a hearing.  *Id.*

The Internal Affairs investigation against Jackson was ultimately closed.  *Id.* ¶ 17.  Jackson alleges that several white officers had been "implicated in multiple Internal Affairs investigations" but "were not involuntarily transferred,

---

[2] For the motions to dismiss for failure to state a claim, the well-pled allegations in the complaint are accepted as true. *See Brockington v. Boykins*, 637 F.3d 503, 505 (4th Cir. 2011). In reviewing the motion to dismiss, the Court may consider allegations in the complaint, matters of public record, and documents attached to the motion to dismiss that are integral to the complaint and authentic. *See Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

reassigned, detailed and/or demoted." *Id.* ¶ 18.  Other black officers had been treated similarly to Jackson. *Id.*

On August 21, 2009, Jackson complained to Sergeant Poist[3] "about the disparate treatment he believed he was receiving." *Id.* ¶ 20.  Poist responded that Jackson "was being reassigned because he was 'tired of hearing rumors about [Jackson] in the Central District.'"[4]  *Id.* (alteration omitted).

On December 8, 2009, Jackson filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").  *Id.* ¶ 21; ECF No. 1-1.  In the charge he alleged disparate treatment in his involuntary transfer because investigated white officers were not transferred.  ECF No. 1-1.  Jackson alleged that were several complaints against D.M., a white female, but she was never transferred or demoted. *Id.*  He also stated that Brown placed only black officers on details and treated white officers better.  *Id.*

On December 15, 2009, Jackson requested a transfer to the Southern District because of a hostile work environment; Sergeant George Giannakolas recommended approval.  ECF No. 1 ¶ 22; ECF No. 1-4.  When Giannakolas submitted the papers to Stanley, "Stanley asked Giannakolas how far he thought this

---

[3] Poist's first name is not in the record.

[4] It is not clear what this reassignment was.

would go."  ECF No. 1 ¶ 22.  Jackson never received a decision on the request.  *Id.* ¶ 23.

On February 4, 2010, the EEOC issued a Notice of Charge of Discrimination to the Department.  ECF No. 1-3 at 2.  On March 2, 2010, the Department received the charge.[5]  ECF No. 1 ¶ 24.

On May 14, 2010, Jackson informed Sergeant Kara Gladden that he needed to take a week off of work to care for his wife who was scheduled to have emergency surgery on June 14, 2010. *Id.* ¶ 25.  Jackson states that his leave request needed to be approved by Sergeant Paul McMillan and Sergeant Cowel Smith. *Id.*  However, Gladden stated that she would give the request to Stanley.  *Id.*  Although Gladden forwarded Jackson's request to Stanley, he took no action.  *Id.*

Jackson's wife suffered complications from her surgery. *Id.* ¶ 27.  On June 22, 2010, she was told to visit the doctor on June 25, 2010, for an emergency appointment.  *Id.* ¶ 27.  Jackson immediately notified his supervisors Gladden, Debbie Young, and John Rodenburg,[6] about the scheduled appointment.  *Id.* ¶ 28. Gladden "signed Jackson out on a medical day" for June 25.  *Id.*

Jackson suggested that rather than taking the full day, he could come to work, but then "call out during the appointment." *Id.*  Jackson received no response to this request and was forced

---

[5] Jackson has provided no reason for the delay.

[6] Jackson has not stated the ranks of Young or Rodenburg.

4

to take a medical or personal leave day. *Id.* However, Stanley charged Jackson as AWOL on June 25, 2010. *Id.* ¶ 29.

Jackson then called Sergeant Carla Hamlin to discuss the AWOL incident and his December 15, 2009, request for transfer. *Id.* ¶ 30. Hamlin stated that Colonel Glen Williams had never received the transfer request. *Id.* Jackson believes that the "only possible reason" was that Stanley and Brown failed to submit the request. *Id.* At some point,[7] Jackson filed a "Supplemental Information in Reference to Charges of Discrimination" describing the December 15, 2009 transfer request, and the AWOL incident. ECF No. 1-3 at 3-4.

On June 30, 2010, Jackson drove his personal vehicle to speak with Officer Mike Miller. *Id.* ¶ 31. When Jackson approached the meeting location, he saw a marked police vehicle, which had stopped another car, partially blocking the street. *Id.* "Observing that there was enough space to go around the vehicles," Jackson pulled up next to the marked police car to speak with Miller. *Id.*

On August 18, 2010, Jackson "was subjected to a random drug test"; no illegal substances were detected. *Id.* ¶ 32. On August 23, 2010, Jackson submitted written requests to Brown for meetings with Skinner and Deputy Major Frederick Stewart, about

---

[7] The document is not dated.

his December 15, 2009, transfer request.  *Id.* ¶ 33; ECF No. 1-5. Jackson does not allege any response.

On September 2, 2010, the Department informed Jackson that his race discrimination complaint against Brown had been closed because the "allegation lacked the criteria needed to substantiate further investigation."  ECF No. 1-6.

On October 18, 2010, Jackson received a Notification of Accused of Complaint that on June 30, he drove his personal vehicle on the sidewalk around police activity and that he drove through a red light.  ECF No. 1-7.  Jackson denied the claims, asserting that his car was too low to drive on a sidewalk.  ECF No. 1 ¶ 36.  The investigation was closed as unfounded.  *Id.* Jackson believed that the complaint "was a personal attack against him by the Complainant."[8]  *Id.*

On September 9, 2011, Jackson received a right to sue letter from the Department of Justice's Civil Rights Division.[9] ECF No. 1-2.  On December 12, 2011, Jackson filed suit, claiming (1) disparate treatment in violation of Title VII of the Civil Rights Act of 1965[10] ("Title VII") and the Maryland Fair

---

[8] Jackson does not allege the Complainant's identity, and the Notification does not disclose it.  *Cf.* ECF Nos. 1 ¶ 36, 1-7.

[9] Jackson had requested the letter because more than 180 days had passed since the EEOC had assumed jurisdiction and the Civil Rights Division had not filed suit.  *See* ECF No. 1-2.

[10] 42 U.S.C. §§ 2000e *et seq.*

Employment Practices Act ("FEPA"),[11] (2) retaliation in violation of Title VII and FEPA,[12] (3) violation of 42 U.S.C. ¶ 1981, (4) violation of 42 U.S.C. ¶ 1983, (5) conspiracy in violation of 42 U.S.C. § 1985(3), (6) intentional infliction of emotional distress, (7) negligent retention and supervision, (8) civil conspiracy, (9) tortious interference with prospective advantage, and (10) violation of Article 24 of the Maryland Declaration of Rights.[13]   ECF No. 1.

On May 21, 2012, Jackson's counsel sent a letter purporting to provide notice of his suit and stating that he had been discriminated against and involuntarily transferred.   ECF No. 26-5 at 2-3.

On May 29, 2012, the City defendants moved to dismiss.   ECF No. 11.   On June 7, 2012, the Department and individual police defendants moved to dismiss.   ECF Nos. 14, 16, 18-19 (SEALED). On August 25, 2012, Jackson opposed the motions.   ECF Nos. 25-27.   On September 12, 2012, the Department, the individual police defendants, and the City defendants replied.   ECF Nos. 29 (SEALED), 31 (SEALED), 33.

---

[11] Md. Code Ann., State Gov't §§ 20-601 *et seq.*

[12] Although the heading refers solely to FEPA, the allegations also refer to Title VII.   *See* ECF No. 1 ¶ 55.

[13] Each count is against every defendant except IV (against the Department, Bealefeld, Dixon, and the City) and VII (against Bealefeld, the Department, the City, and Maryland).

II.   Analysis

   A.   Legal Standard

Under Fed. R. Civ. P. 12(b)(6), an action may be dismissed for failure to state a claim upon which relief can be granted. Rule 12(b)(6) tests the legal sufficiency of a complaint, but does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

The Court bears in mind that Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." *Migdal v. Rowe Price-Fleming Int'l Inc.*, 248 F.3d 321, 325-26 (4th Cir. 2001). Although Rule 8's notice-pleading requirements are "not onerous," the plaintiff must allege facts that support each element of the claim advanced. *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 764-65 (4th Cir. 2003). These facts must be sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

This requires that the plaintiff do more than "plead[] facts that are 'merely consistent with a defendant's liability'"; the facts pled must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Twombly*, 550 U.S. at 557). The complaint must

8

not only allege but also "show" that the plaintiff is entitled to relief. *Id.* at 679 (internal quotation marks omitted). "Whe[n] the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* (internal quotation marks and alteration omitted).

B.   The City Defendants' Motion

The City defendants seek dismissal because under Maryland law they are not Jackson's employer, and they have taken no action against him. ECF No. 11-1.

1.   Title VII Claims

The City defendants assert that under Maryland law, the Department is a state agency, and they are not Jackson's employer. ECF No. 11-1 at 6-7. Jackson acknowledges that the Department is a state agency, but he claims that the City exercises sufficient control over the Department. ECF No. 25 at 11.

Only employers may be held liable under Title VII. *See Lissau v. S. Food Serv., Inc.*, 159 F.3d 177, 181 (4th Cir. 1998). Title VII defines "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees . . . and any agent of such a person."[14]   42 U.S.C. § 2000e(b).

___

[14] FEPA 20 similarly defines employer as a person "engaged in an industry or business" having "15 or more employees" or the agent

9

Under Maryland law, the Department has, since the 1860s, been a state agency. *See Mayor & City Council of Balt. v. Clark*, 944 A.2d 1122, 1128-29 (Md. 2008). Reflecting this status, the city may not be held liable for the torts of police officers under respondeat superior. *See Clea v. Mayor & City Council of Balt.*, 541 A.2d 1303, 1306 (Md. 1988).

Jackson asserts that the City defendants nevertheless maintain sufficient control over the Department for Title VII liability. ECF No. 25 at 11. However, the complaint alleges no plausible facts to that effect; there are only conclusionary allegations that the City defendants exercised sufficient control. ECF No. 1 ¶¶ 7-9. Further, other cases in this district have recently held that the City does not exert sufficient control over the Department for Title VII liability. *See Bradley v. Balt. Police Dep't*, Civil No. JKB-11-1799, 2012 WL 3637155 at *2-3 (D. Md. Aug. 22, 2012);[15] *Brown v. Balt. Police Dep't*, Civil No. RDB-11-0136, 2011 WL 6415366, at *5 (D. Md. Dec. 21, 2011). Accordingly, Counts I and II will be dismissed as to the City defendants.

of such person. Md. Code Ann., State Gov't § 20-601. As the Maryland courts "traditionally seek guidance from federal cases in interpreting" Title 20, the analysis as to the employer is the same as under Title VII. *See Haas v. Lockheed Martin Corp.*, 914 A.2d 735, 752 (Md. 2007).

[15] The Court notes that Jackson's allegations and arguments about the City defendants are substantially the same as Bradley's. *Compare* ECF Nos. 1, 25, *with* No. JKB-11-1799 ECF Nos. 1, 27.

2.   Section 1981 and 1983 Claims

The City defendants assert that they are not liable under §§ 1981 and 1983 because Jackson has not alleged that his rights were violated by a policy, custom or practice of the city.   ECF No. 11-1 at 8-9.   Jackson contends that the City defendants had a policy of inaction.   ECF No. 25 at 13.

Municipalities may not be held liable under §§ 1981 or 1983 under a respondeat superior theory.   *Jett v. Dall. Indep. Sch. Dist.*, 491 U.S. 701, 735-36 (1989); *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 691 (1978).   Instead, they may be liable only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represents official policy, inflicts the injury."   *Monell*, 436 U.S. at 694; *see Jett*, 491 U.S. at 736.

"[A] policy or custom may possibly be inferred from continued inaction in the face of a known history of a widespread constitutional deprivation," but "it must be of such a character that municipal employees could reasonably infer from it tacit approval of the conduct at issue."   *Milligan v. City of Newport News*, 743 F.2d 227, 230 (4th Cir. 1984).

There are no allegations in the complaint that the City defendants had a custom or policy resulting in Jackson's

treatment.  Counts III and IV against the City defendants will
be dismissed.

> 3.    Section 1985 Conspiracy

The City defendants assert that Jackson has failed to
identify anyone participating in the alleged conspiracy.  ECF
No. 11-1 at 10.  Jackson responds that the policy or custom is
actionable as a § 1985 conspiracy.  ECF No. 25 at 15.

As discussed above, Jackson has not alleged a custom or
policy of discrimination by the City defendants.  *See supra* Part
II.B.2.  Further, the complaint alleges merely that the
"[d]efendants conspired with and amongst each other," but does
not make any plausible allegations about the City defendants'
participation in the conspiracy.  *Cf.* ECF No. 1 ¶ 66.  Further,
to the extent his conspiracy claim is premised on his Title VII
claims, there is no cause of action.  *See Great Am. Fed. Sav. &
Loan Ass'n v. Novotny*, 442 U.S. 366, 378 (1979).  Accordingly,
Count V will be dismissed.

> 4.    State Claims

Jackson has alleged several state torts against the City
defendants.  As stated above, *see supra* Part II.B.1, Maryland
law is clear that the City defendants are not be liable for
torts of the Department.  *See Clea*, 541 A.2d at 1306.  Further,
Jackson has made no plausible allegations against the City
defendants that would entitle him relief.  *See* ECF No. 1 ¶¶ 70-

96.   Accordingly, the state law claims against the City defendants will be dismissed.  *See Bradley*, 2012 WL 3637155, at *5.  The City defendants' motion to dismiss will be granted.

C.   The Department and Bealefeld's Motion

The Department and Bealefeld seek dismissal of every claim against them.[16]  *See* ECF No. 19.

1.   Title VII Claims

a.   Bealefeld

Bealefeld seeks dismissal of the Title VII claims against him because he is not an employer.  ECF No. 19 (SEALED) at 9. Jackson asserts that the Title VII claims are against Bealefeld in his official capacity.  ECF NO. 26 at 13.

"[S]upervisors are not liable in their individual capacities for Title VII violations."  *Lissau*, 159 F.3d at 181. The complaint does not indicate that the Title VII claims against Bealefeld were in his official capacity.  Instead, Jackson requests "judgment against *individual* Defendants."  ECF No. 1 ¶¶ 52, 60.  Further, there is no purpose in suing Bealefeld in his official capacity; it would be the same as suing the Department, which is already a defendant.  *See Bradley v. Balt. Police Dep't*, Civil NO. JKB-11-1799, 2012 WL 4321738,

---

[16] Although they caption their motion one "for partial dismissal, or alternatively, motion for partial summary judgment," there appears to be no claim excluded from its scope.  *See* ECF Nos. 14, 19.  To the extent they request summary judgment, the Court does not reach those arguments.

at *2 (D. Md. Sept. 19, 2012).  Accordingly Counts I and II will
be dismissed as to Bealefeld.

> b.   Exhaustion

The Department asserts that Jackson has failed to exhaust
his administrative remedies as required under Title VII.  ECF
No. 19 (SEALED) at 10.  Jackson asserts that his EEOC charge was
sufficient.  ECF No. 26 at 14.

Before a plaintiff may file suit under Title VII, he must
file a charge of discrimination with the EEOC.  42 U.S.C. §
2000e-5(f)(1).  "Only those discrimination claims stated in the
initial charge, those reasonably related in the original
complaint, and those developed by reasonable investigation of
the original complaint" may serve as predicates to a Title VII
suit.  *Jones v. Calvert Grp., Ltd.*, 551 F.3d 297, 300 (internal
quotation marks omitted).

In his EEOC charge Jackson states that he was involuntarily
transferred to the Southwest District, demoted and placed on
patrol because of an Internal Affairs investigation stemming
from the complaints of white officers.  ECF No. 1-1.  He alleged
that only black officers were placed on details, and that D.M.,
a white female, was never reassigned or demoted despite several
complaints.  *Id.*  Jackson checked the boxes for race and sex
discrimination, and that the action was continuing.  *Id.*
Jackson then submitted supplemental information to the EEOC

14

about his requests for time off for his wife's surgery and his requests for transfer out of the Southwest District.   ECF No. 1-3 at 3-4.

Johnson's EEOC complaint does not mention his drug test or the June 30 driving incident.   *Cf.* ECF Nos. 1-1, 1-3.   Jackson has not claimed that these actions were retaliation for his charges of discrimination.   *Cf.* ECF No. 51 ¶ 55 (listing other incidents as retaliatory).   To the extent that Johnson's discrimination claim is premised on these incidents, the Court is without jurisdiction to consider them.   *See Jones*, 551 F.3d at 300.   Jackson has properly exhausted his other disparate treatment claims.   Because the retaliation claims arise out of his disparate treatment claims, they need not be exhausted before the EEOC.   *Nealson v. Stone*, 958 F.2d 584, 590 (not requiring exhaustion for retaliation related to the discrimination charged to the EEOC).

c.   Adverse Employment Action

The Department asserts that Jackson has not alleged an adverse employment action because he has not stated how the Internal Affairs charges, involuntary transfer, being placed on patrol, and being denied requests for leave are adverse employment actions.   ECF No. 19 at 17-18.   Jackson merely asserts that he properly alleged adverse action.   ECF No. 26 at 18.

15

One of the required elements in a disparate treatment claim, "[a]n adverse employment action is a discriminatory act that adversely affects the terms, conditions, or benefits of the plaintiff's employment."[17]  *Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 219 (4th Cir. 2007) (internal quotation marks and alteration omitted).  "The mere fact that a new job assignment is less appealing to the employee, however, does not constitute adverse employment action."  *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 376 (4th Cir. 2004).  "[A]bsent any decrease in compensation, job title, level of responsibility, or opportunity for promotion, reassignment to a new position commensurate with one's salary level does not constitute an adverse employment action . . . ."  *Boone v. Goldin*, 178 F.3d 253, 256-57 (4th Cir. 1999).

Jackson alleges that he was transferred to the Southwest District and "detailed/demoted to patrol."  ECF No. 1 ¶ 16.  He has not alleged his prior position, how a patrol assignment had

---

[17] The other elements of a disparate treatment claim are (1) "membership in a protected class," (2) "satisfactory job performance," and (3) "different treatment from similarly situated employees outside the protected class."  *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd* 132 S. Ct. 1327 (2012).

16

less responsibility or opportunity for promotion, or any salary implications.  This is insufficient to state a claim.[18]

Similarly, Jackson does not allege how being found AWOL constituted a disparate treatment adverse employment action.[19] He alleges that these events occurred, but he has not described how his position or any condition of his employment changed.[20] *Cf.* ECF No. 1 ¶¶ 28-30, 32.  Jackson has failed to state a disparate treatment claim.  *See Boone*, 178 F.3d at 256-57. Count I will be dismissed as to the Department.

---

[18] *See Fulmore v. City of Greensboro*, 834 F. Supp. 2d 396, 417-18 (M.D.N.C. 2011) (police officer's conclusionary allegation that his assignment to patrol caused his loss of ability to apply for promotions was insufficient to state a claim).

[19] Jackson alleges that his rights were violated under the Family Medical Leave Act, 29 U.S.C. §§ 2601 *et seq.*, and the Law Enforcement Officer's Bill of Rights, Md. Code Ann., Pub. Safety §§ 3-101 *et seq.*  Jackson has not, however, brought suit under those statutes.

[20] In his opposition, Jackson asserts that he was forced to work details "that an officer of his experience, seniority, and stature would not typically be forced to work," which was a sufficient loss of prestige or demeaning change in employment to qualify as adverse employment action.  ECF No. 26 at 24.  He further asserts that he was forced to quit a second job because of his changed schedule.  *Id.* at n.11.  However, these facts are not evident from the complaint and Jackson may not introduce them in his opposition.  *See Zachair, Ltd. v. Driggs*, 965 F. Supp. 741, 748 n.4 (D. Md. 1997).

The Department has not challenged the merits of Jackson's retaliation claims.[21]  *Cf.* ECF No. 19 at 17.  Count II will not be dismissed.

      2.  Section 1981

The Department and Bealefeld assert that Jackson's § 1981 claims should be dismissed because he has failed to allege a contractual relationship.  ECF No. 19 at 22.  Jackson contends that his rights that were infringed stem from the Constitution, Maryland law, Departmental General Orders, and a Memorandum of Understanding between the Department and a police union.  ECF No. 26 at 25.

"[A] plaintiff cannot state a claim under § 1981 unless he has (or would have) rights under the existing (or proposed) contract that he wishes 'to make and enforce.'"  *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 479-80 (2006).  "Any claim brought under § 1981, therefore, must initially identify an impaired 'contractual relationship' under which the plaintiff has rights."  *Id.* at 476 (*citing* 42 U.S.C. § 1981).  Although § 1981 "does not provide a general cause of action for race

---

[21] Further, the adverse action element of a retaliation claim is different from that of disparate treatment and is that "a reasonable employee would have found the challenged action materially adverse."  *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 61-64 (2006).  The other elements of a retaliation claim are (1) engaging in a protected activity, and (2) the adverse action was causally connected to the protected activity.  *Yashenko v. Harrah's NC Casino Co., LLC,* 446 F.3d 541, 551 (4th Cir. 2006).

discrimination," *Youngblood v. Hy-Vee Food Stores, Inc.*, 266 F.3d 851, 855 (8th Cir. 2001), employees, even at-will employees, have contractual relationships with their employers. *See Spriggs v. Diamond Auto Glass*, 165 F.3d 1015, 1018-19 (4th Cir. 1999). Accordingly, Jackson has the requisite contractual relationship for application of § 1981.

However, Jackson may not bring a § 1981 claim against the Department or Bealefeld. Section 1983 "provides the exclusive federal damages remedy for violation of the rights guaranteed by § 1981 when the claim is pressed against a state actor." *Jett*, 491 U.S. at 735. Jackson has alleged that Bealefeld was acting under color of state law, making him a state actor for purposes of this suit.[22] Further, there is no dispute that the Department is a state actor. Accordingly, Count III will be dismissed.

   3.   Section 1983

The Department and Bealefeld assert that Jackson has not stated a § 1983 claim because he has not stated a claim under Title VII or due process. ECF No. 19 at 26-30. Jackson asserts that he has alleged a Title VII violation, and he did not

---

[22] Jackson has asserted a claim against Bealefeld for violation of § 1983. *See* ECF No. 1 ¶ 61. "In cases under § 1983, 'under color' of law has consistently been treated as the same thing as the 'state action' required under the Fourteenth Amendment." *United States v. Price*, 383 U.S. 787, 794 n.7 (1966); *see Victors v. Kronmiller*, 553 F. Supp. 2d 533, 543 & nn.9-10 (D. Md. 2008).

receive the proper process for his involuntary transfer.   ECF No. 26 at 27-28.

The elements of a prima facie case under Title VII and § 1983 are the same.   *Gariola v. Va. Dep't of Gen. Servs.*, 753 F.2d 1281, 1285 (4th Cir. 1985).   As stated above, Jackson's Title VII retaliation claim will not be dismissed.   Accordingly, that portion of his § 1983 claim remains against the Department.   Because there are no plausibly alleged facts that Bealefeld was responsible for or aware of the retaliation, that claim against him will be dismissed.[23]   Because Jackson's Title VII disparate treatment was dismissed, so will that component of his § 1983 claim.

Next, the Department and Bealefeld assert that Jackson was not deprived of due process because he was not deprived of any rights.   ECF No. 19 at 26.   Jackson alleges that he did not receive notice and thus did not have a hearing.   ECF No. 1 ¶ 19.

The Due Process Clause protects the deprivation of life, liberty, and property.   U.S. Const. amend. XIV.   Jackson appears to allege the loss of a property interest through the loss of secondary employment, income, and other employment benefits.   ECF No. 1 ¶ 63.

---

[23] *Cf. Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (stating that supervisory liability can exist under 1983); *see also Bradley*, 2012 WL 4321738 at *7 (dismissing similar claim against Bealefeld in similar circumstance).

Jackson asserts that is entitled to relief because he did not receive notice or a hearing for his involuntary transfer or subsequent requests for another transfer.   ECF No. 26 at 26. However, there is no substantive property right in any procedural rights that Jackson may have had.   *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985); *Jackson v. Long*, 102 F.3d 722, 729 (4th Cir. 1996).   Accordingly, Jackson has no due process claim arising from his transfer.

Further, Jackson has not alleged what property right he has in the assorted benefits that he asserts were lost.   Baltimore and Maryland law prevent Jackson from being terminated without cause or being prohibited from holding secondary employment. *See* Md. Code Ann., Pub. Safety § 3-103; Baltimore City Public Local Law § 16-11(a).   Jackson has alleged no violation of these rights.[24]   Because Jackson has not alleged the loss of any property rights, that portion of his § 1983 claim will be dismissed.   Accordingly, Count IV will be dismissed except for the retaliation claim against the Department.

4.   Section 1985

The Department and Bealefeld assert that Jackson has not sufficiently alleged the existence of a racially charged

---

[24] Similarly, to the extent he alleges a Family Medical Leave Act violations, he has not identified a specific property interest that was violated.   *See* ECF No. 1 ¶ 28

conspiracy.  ECF No. 19 at 30.  Jackson asserts that he has pled the required elements.  *See* ECF No. 26 at 28.

To state a claim for racial conspiracy under § 1985(3), Jackson must allege (1) a conspiracy of two or more persons, (2) motivated by invidiously discriminatory class-based animus, (3) to deprive him of the equal enjoyment of his rights, (4) which results in injury, (5) as a consequence of an overt act committed by the defendants, and (6) a meeting of the minds of the defendants to violate his constitutional rights.  *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011).

Jackson's complaint is conclusionary, alleging only that there was a conspiracy without any specific facts.  *See* ECF No. 1 ¶ 66.  Without specifying the members of the conspiracy, or communications establishing the meeting of the minds, Jackson has not plausibly alleged a conspiracy.  *See A Society Without a Name*, 655 F.3d at 347.  Count V will be dismissed.

      5.    State Law Claims

      a.    The Department

The Department assets that it is immune to Jackson's claims under Maryland law.  ECF No. 19 at 30-31.  Jackson asserts that he properly provided notice under the Maryland Local Government Tort Claims Act ("LGTCA").  ECF No. 26 at 29-30.

As discussed above, the Department is a state agency under Maryland law.  *See supra* Part II.B.1.  This grants the

Department the state's sovereign immunity. *See Lee v. O'Malley*, 533 F. Supp. 2d 548, 554 (D. Md. 2007).

Jackson asserts that he has complied with the LTGCA's notice provisions, most likely relying on the LTGCA's listing of the Department as a local government for purposes of employee liability. *See* Md. Code Ann., Cts. & Jud. Proc. § 5-301(c), (d)(21). However, this does not mean that the LGTCA waived the Department's sovereign immunity. In *Baltimore Police Department v. Cherkes*, 780 A.2d 410 (Md. Ct. Spec. App. 2001), the Court of Special Appeals undertook an exhaustive analysis of the Department's immunity in the context of its inclusion in the LGTCA. *See id.*, 780 A.2d at 422-436. The court held that the Department is immune from state common law and constitutional tort claims.[25] *Id.* at 780 A.3d 436 & n.9. Counts VI-X against the Department will be dismissed.

b.      Bealefeld

To state a state tort claim against employees of the Baltimore Police Department, the plaintiff must provide written notice within 180 days of the injury stating "the time, place and cause of the injury." Md. Code Ann., Cts. & Jud. Proc. § 5-

---

[25] Under the LGTCA the Department *is* responsible for paying certain judgments awarded against its officers. *Cherkes*, 780 A.2d at 436; *see* Md. Code Ann., Cts. & Jud. Proc. § 5-303(b).

304(b).[26]   Substantial compliance, giving the local government actual notice of the required information within the statutory period, satisfies the notice requirement.  *Moore v. Norouzi*, 807 A.2d 632, 646-47 (Md. 2002).   The plaintiff bears the burden of showing substantial compliance.  *See White v. Prince George's Cnty.*, 877 A.2d 1129, 1139 (Md. Ct. Spec. App. 2005).   However, "upon motion and for good cause shown, the court may entertain the suit even though the required notice was not given" unless the defendant shows prejudice from the lack of notice.  Md. Code Ann., Cts. & Jud. Proc. § 5-304(d).

This district has permitted an EEOC complaint to serve as notice when it otherwise meets the "time, place, and injury" requirements.  *See Nelson v. City of Crisfield*, Civil No. L-10-1816, 2010 WL 4455923, at *3 (D. Md. Nov. 5, 2010).  Jackson filed his EEOC charge on December 8, 2009, and alleges that the Department received it on March 2, 2010.  *See* ECF Nos. 1 ¶ 24, 1-1.  The only dates in the charge were January 28, 2009, when Jackson was informed he was to be transferred, and August 21, 2009, when he complained to Poist about his disparate treatment. *See* ECF No. 1-1.  The charge, and its receipt by the Department, was considerably more than 180 days after the transfer.

---

[26] *See also Rios v. Montgomery Cnty.*, 872 A.2d 1, 14 (Md. 2005) ("[T]he LGTCA notice requirements are a condition precedent to maintaining an action against a local government or its employees . . . .  A condition precedent cannot be waived . . . .")

Further, his complaint to Poist does not articulate any injury, much less one relating to the state law claims. *See* ECF No. 1-1. The charge is not substantially compliant with the LGTCA.

Similarly, Jackson has not shown that his Supplemental Information provided the proper notice, as there is no indication when it was received by the Department.[27] *See* ECF No. 1-3 at 3-4. Also, Jackson's counsel's letter stating an intent to sue was dated May 21, 2012, long past the deadline for LGTCA notice. *See* ECF No. 26-5.

Jackson has not moved for consideration of his claim absent notice, and he has not asserted the good cause required by the statute. *See* Md. Code Ann., Cts. & Jud. Proc. § 5-304(d). Accordingly, Counts VI-X against Bealefeld will be dismissed. The Department and Bealefeld's motion will be granted in part and denied in part.

    D.   The Individual Police Defendants' Motion

        1.   Title VII and FEPA

The individual police defendants seek dismissal because they are not Jackson's employer. ECF No. 18 at 9. Individual supervisors are not liable for Title VII violations. *See*

---

[27] Although the Supplemental Information is part of the same exhibit as the Notice of Charge of Discrimination sent to the Department, they cannot share the same date. The Notice is dated February 4, 2010, but the Supplemental Information references the AWOL incident of June 2010. *See* ECF No. 1-3 at 2-4.

*Lissau*, 159 F.3d 181; *supra* Part II.C.1.  Accordingly, Counts I and II will be dismissed.

      2.   Section 1981

The individual police defendants assert that Jackson cannot maintain his suit against them because § 1983 is the exclusive remedy.  ECF No. 18 at 22.  Jackson asserts that he may bring the action against them individually.  ECF No. 27 at 26.

Unlike Bealefeld, Jackson has not alleged that the individual police defendants were acting under color of state law, nor has he sued them for § 1983 violations.  *Cf.* ECF No. 1 ¶ 62.  Accordingly the § 1981 claims may proceed against them. *See Brown v. Balt. Police Dep't*, Civil No. RDB-11-0136, 2012 WL 5878824, at *4 (D. Md. Nov. 20, 2012).

The elements of Title VII and § 1981 discrimination and retaliation claims are the same.  *See CBOCS West, Inc. v. Humphries*, 553 U.S. 442, 455 (2008); *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 n.1 (4th Cir. 2002).  Because the Title VII disparate treatment claim will be dismissed, so will that component of the § 1981 claim.

Supervisors may be liable under § 1981 when they "authorize, direct or participate in" a retaliatory act.  *Atkins v. Winchester Homes*, Civil No. CCB-06-0278, 2007 WL 269083, at *9 (D. Md. Jan. 17, 2007).  Jackson alleges that Stanley improperly charged him with being AWOL in retaliation for his

allegations of discrimination.  *See* ECF No. 1 ¶¶ 29, 55.
Similarly, he alleges that Brown failed to address his request
for meetings with Skinner and Stewart about his transfer
request.  *See id.* ¶¶ 33, 55.  Jackson has alleged Stanley and
Brown's retaliatory participation.  There are no allegations
about any authorization, direction or participation by Skinner.
Accordingly, the disparate treatment claim will be dismissed, as
will the retaliation claim against Skinner.

> 3.   Section 1985

As stated above for Bealefeld and the Department, Jackson
has failed to plausibly allege a racial conspiracy.  *See supra*
Part II.C.4.  Similarly, the allegations against the individual
police defendants are insufficient.  Count V will be dismissed.

> 4.   State Tort Claims

As stated above, Jackson has failed to comply with the
LGTCA's notice provisions.  *See supra* Part II.C.5.  Accordingly,
the state tort claims in Counts VI, VIII, IX, and X will be
dismissed.  The individual police defendants' motion will be
granted in part and denied in part.

III. Conclusion

For the reasons stated above, the City defendants' motion to dismiss will be granted.  The Department, Bealefeld's, and the individual police defendants' motions to dismiss will be granted in part and denied in part.


_____3/15/13_____
Date

_____
William D. Quarles, Jr.
United States District Judge